## UNITED STATES DISTRICT COURT
## DISTRICT OF SOUTH CAROLINA
## ORANGEBURG DIVISION

| | | |
|---|---|---|
| Marion James, | ) | C/A No.: 5:21-cv-00750-CMC |
| | ) | |
| Plaintiff, | ) | **COMPLAINT** |
| | ) | |
| v. | ) | **JURY TRIAL DEMANDED** |
| | ) | |
| Securitas Security Services USA, Inc., | ) | |
| Carrie Yvonne Downing, individually, | ) | |
| and Justin Heyward, individually, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

## COMPLAINT

As and for his Complaint, Plaintiff Marion James states and alleges the following against Defendants Securitas Security Services USA, Inc.; Carrie Yvonne Downing, individually; and Justin Heyward, individually:

### STATEMENT OF CLAIM

1. Plaintiff Marion James ("Marion") brings this action to recover unpaid wages and for retaliation arising out of Defendants' violations of the Fair Labor Standards Act (herein, "FLSA").

### PARTIES

2. Marion is domiciled in the State of South Carolina, as he permanently resides at 68 Christine Lane, Bamberg, South Carolina 20993.

3. Securitas Security Services USA, Inc. (herein, "Securitas") is a Delaware corporation registered to do business in the State of South Carolina.

1

4. Upon information and belief, Carrie Yvonne Downing (herein, "Downing") is domiciled in the State of South Carolina.

5. Upon information and belief, Justin Heyward (herein, "Heyward") is domiciled in the State of South Carolina.

6. At all times relevant to this Complaint, Downing was Securitas's Human Resources Manager, to whom Marion directly reported.

7. At all times relevant to this Complaint, Heyward was Securitas's Southeastern Regional Vice President, the Securitas regional office in which Marion worked.

8. Upon information and belief and at all times relevant to this Complaint, Downing and Heyward controlled the terms and conditions of Marion's employment, including his compensation and benefits, and exercised discretion with regard to same.

## JURISDICTION AND VENUE

9. This Court has original jurisdiction over this action pursuant to 28 U.S.C. § 1331, because Marion has alleged causes of action under the FLSA, 29 U.S.C. § 201 et seq.

10. Venue is proper under § 28 U.S.C. 1391(b)(2) because a substantial part of the events giving rise to this claim occurred in the District of South Carolina, Orangeburg Division.

## FACTS

11. Upon information and belief, Securitas is in the business of providing security personnel for corporate clients, worldwide.

12. While employed by Securitas, Marion worked as a Security Guard at the Regional Medical Center in Orangeburg, South Carolina, where he was promoted to Sergeant, Lieutenant, then Captain, and is now currently serving as its Director of Security.

13. Securitas hired Marion as a Security Guard on or around 2014, at a rate of $12.00 per hour.

14. In that role, Marion worked as a Security Guard at various posts at Securitas clients' physical locations, and at the direction of Downing.

15. Securitas receives calls for its services from businesses at all hours, and without predictable frequency.

16. Downing would field the calls from new clients and attempt to fill the security guard vacancy, which proved challenging given the ruralness of Orangeburg and its surrounding areas.

17. Marion is well-known in the Orangeburg area, which is a relatively rural area of South Carolina.

18. As such, between 2015-2020 Securitas, through Downing, began requesting Marion's assistance in recruiting security guards in the Orangeburg region.

19. Because he is well-connected in Orangeburg, Marion was able to fill the vacancies quickly.

20. Marion filled vacancies by calling people known to him and requesting that they work a particular security job.

21. Thus, Securitas, through Downing, began to request Marion's assistance in recruiting security guards more frequently.

22. Eventually, Marion was responsible for recruiting; scheduling; distributing, collecting and submitting time sheets; and distributing paychecks to Securitas employees in the Orangeburg region (collectively, "Supervisory Work").

23. This Supervisory Work included answering his personal cell phone at all hours of the day and night on behalf of Securitas.

24. Marion's former supervisor, Adam Watson, and Downing directed him to perform this Supervisory Work.

25. Marion spent between ten (10) and twenty (20) hours performing this Supervisory Work for Securitas from approximately 2015 to 2020.

26. During this timeframe, Downing sent Marion numerous emails requesting he perform a multitude of Supervisory Work.

27. At some point during this time, Downing advised Marion that Securitas would compensate him for the Supervisory Work he performed for Securitas, but to date Marion has received no compensation for same.

28. On or around September 2019, Marion complained to District Manager, Jaclyn Fallara ("Fallara"), that he was not being compensated for the Supervisory Work he was performing for Securitas.

29. Fallara escalated Marion's concerns to Heyward, who determined that Marion should be compensated "something" for the past hours he had spent performing Supervisory Work, but that he should not be directed to perform that Work going forward, and instead only be permitted to perform work for Securitas as a Security Guard.

4

30. At Heyward's direction, between August 2019 and September 2019, Securitas issued Marion either two or three $200 "bonuses" as compensation, totaling between $200 and $600.

31. These "bonuses" did not adequately or fully compensate Marion for the Supervisory Work he had performed for 10-20 hours per week for three to four years.

32. Upon information and belief, these "bonuses" had negative tax implications for Marion.

33. On or around late February or early March 2020, Downing terminated Marion as a Security Guard.

34. Upon information and belief, Marion's termination was at Heyward's direction, and because of his complaints about non-payment of wages.

35. Despite no longer working as a Security Guard for Securitas, Securitas, through Downing, requested that Marion continue the Supervisory Work of recruiting, scheduling, handing out timesheets, collecting time sheets, submitting time sheets, and distributing paychecks to Securitas employees in the Orangeburg region.

36. Marion continued to not be compensated for this work.

## CAUSE OF ACTION ONE:
## VIOLATION OF THE FAIR LABOR STANDARDS ACT—FAILURE TO PAY MINIMUM WAGE AND KEEP RECORDS, AND RETALIATION

37. Marion re-states and re-alleges the allegations in the above Paragraphs as if set forth fully herein.

38. At all times relevant to this Complaint, all Defendants were Marion's "employers" and Marion was their "employee" as defined under the FLSA.

5

39. Upon information and belief, Defendants engage in interstate commerce and the annual gross volume of sales made, or business done, exceeds $500,000.00.

40. As a Security Guard and while performing Supervisory Work for Securitas, Marion was engaged in commerce and employed in an enterprise engaged in commerce as defined under the FLSA

41. As such, Marion was a "covered" employee for purposes of the FLSA.

42. At all times relevant to this Complaint, Downing acted directly or indirectly on behalf of Securitas with regard to Marion's employment and performance of the Supervisory Work for Securitas.

43. Upon information and belief, Downing had the power to hire and fire employees (including Marion, whom she eventually fired); supervised and controlled Marion's work schedule as evidenced by her expectation that he respond to her requests for Supervisory Work; and determined that Marion would not be paid for Supervisory Work.

44. Upon information and belief, Heyward had the power to hire and fire employees and/or to exercise control over those individuals responsible for hiring and firing (including when he eventually instructed Downing to fire Marion); controlled Marion's work schedule when he determined Marion would no longer be permitted to perform Supervisory Work; and determined that Marion should be paid bonuses for past Supervisory Work he had performed instead of W2 wages.

45. As such, at all times relevant to this Complaint, Downing and Heyward were also Marion's "employers" for purposes of the FLSA.

46. The FLSA at 29 C.F.R § 1620.32, requires covered employers to maintain payroll records, including hours worked, with regard to covered employees.

47. Defendants failed to keep records of the hours Marion performed for his Supervisory Work.

48. The FLSA, 29 U.S.C. § 206(a), mandates that, unless exempt, covered employees must receive $7.25 per hour for the first forty (40) hours per workweek as a minimum wage.

49. Upon information and belief, Securitas employees with Supervisory responsibilities similar to Marion's Supervisory Work, received at least $16.00 per hour.

50. Marion was entitled to at least the federal minimum wage per hour for his first forty (40) hours per workweek.

51. Because he was not paid for the 10-20 hours of Supervisory Work performed per week, Marion's wages were below $7.25 per hour for his first forty (40) hours per workweek.

52. Defendants knew or should have known the FLSA required them to compensate employees at least the federal minimum wage of $7.25 an hour.

53. Defendants acted in bad faith and without reasonable grounds to believe nonpayment of Marion's wages did not violate the FLSA, especially in light of Marion's requests for compensation for work performed.

54. Defendants' conduct was willful because they showed reckless disregard for Marion's rights under the FLSA when they refused to pay him anything, let alone the federal minimum wage, for years.

55. 29 U.S.C. § 215(a)(3) (herein, "FLSA anti-retaliation provision") prohibits any person to "discharge or in any other manner discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to this Act, or has testified or is about to testify in any such proceeding, or has served or is about to serve on an industry committee."

56. Marion engaged in protected activity when he requested payment for the Supervisory Work he performed for Securitas from his supervisors, namely Downing and Fallara.

57. Defendants' retaliatory motive toward Marion is made readily apparent given the close temporal proximity between Marion's complaint of nonpayment to Fallara (who escalated Marion's concerns in September 2019), and Marion's termination in the spring of 2020.

58. Defendants' failure to pay Marion the federal hourly minimum wage and their retaliation for reporting same constitute willful violations of the FLSA, entitling Marion to liquidated damages plus reasonable attorneys' fees and costs.

**PRAYER FOR RELIEF**

WHEREFORE, Marion prays for the following relief:

1. Judgment against Defendants jointly and severally for actual damages for their failure to pay minimum wages in violation of the FLSA, liquidated, plus reasonable attorneys' fees and costs;

2. For such other relief as the Court deems just and equitable.

Dated: March 16, 2021                    /s/ Casey Martens
                                         Casey Martens (#12812)
                                         Molly R. Hamilton Cawley (#11838)
                                         MHC Law, LLC
                                         460 King Street, Suite 200
                                         Charleston, SC  29403
                                         Tel: (843) 225-8651
                                         Casey@mhc-lawfirm.com
                                         Molly@mhc-lawfirm.com

                                         **ATTORNEYS FOR PLAINTIFF**